**INDIANA CIVIL RIGHTS COMMISSION, Jodie L. Jackson and Larry J. Stovall, Appellants (Respondents below),**

v.

**Clyde ALDER and Barbara Jean Alder, d/b/a Stoney Pike Mobile Home Park, Appellees (Petitioners below).**

No. 09S02–9806–CV–344.

Supreme Court of Indiana.

July 22, 1999.

---

Jacquelyn Thompson, Indianapolis, Indiana, Attorney for Appellants.

Jay T. Hirschauer, Logansport, Indiana, Attorney for Appellees.

**ON PETITION TO TRANSFER**

BOEHM, Justice.

In this housing discrimination case we conclude that the Indiana Civil Rights Commission has the authority to award damages for economic and emotional injury under Indiana Code § 22–9–1–6, but does not have authority to award punitive damages.

**Factual and Procedural Background**

In 1985, Jodie Jackson, her husband and her two children moved into a mobile home owned by her parents in the Stoney Pike Mobile Home Park. Stoney Pike is owned and operated by Clyde Alder and his wife Barbara. The Alders and the Jacksons are white. Jackson and her husband were divorced in 1988, but continued to live together in the home for nine months after the divorce was final. In September of 1989, Jackson met Larry Stovall, an African–American. A few months later Stovall began visiting Jackson at her mobile home and occasionally stayed overnight.

On one occasion in the Spring of 1990, Stovall and two friends, also African–American men, stayed at Jackson's home after they returned late at night from a trip to Indianapolis with Jackson. Shortly thereafter, Alder put a copy of the park rules in Jackson's mailbox. Alder had circled rule num-

ber 9 "One family per mobile home"· and written "or you can move within thirty days" next to the circled rule. Jackson approached Alder to explain that no one but her children lived with her in the home. Alder responded that three men were living with Jackson and that he did not want people of "that kind" in his mobile home park. He added that if he allowed one he would have to allow more. When Jackson asked Alder what kind of people he was referring to he said "black people, colored people."[1] The Alders then filed an eviction action against Jackson. Jackson prevailed in that suit but was warned by the trial court that if she continued to violate the one family rule the court would find in the Alders' favor the next time they sought eviction. After being served with another eviction notice, Jackson moved the mobile home from Stoney Pike.

Jackson and Stovall filed a complaint against the Alders with the Indiana Civil Rights Commission alleging housing discrimination based on race. After an investigation, a hearing was held and the hearing officer issued proposed findings of fact, conclusions of law and a proposed order, all of which the Commission adopted substantively verbatim. The Commission found that the Alders committed unlawful discriminatory practices when they constructively evicted Jackson from the park based on Stovall's race. The Commission found the Alders' proffered explanation, that Jackson violated the "one family per home" rule, to be pretextual, noting that other unmarried couples, including Jackson and her former husband,

had lived in one home in the park without being evicted.

As a remedy for the discrimination, the Commission ordered the Alders to pay Jackson $1,797.96 in out-of-pocket damages, $80 for emotional distress and $100 in punitive damages. The Alders were also ordered to pay the expenses of returning Jackson's mobile home to the lot it occupied in Stoney Pike. If the home could not be moved, the Alders were ordered to provide Jackson with an equivalent home in exchange for her home. Stovall was awarded $15 in out-of-pocket damages, $35 for emotional distress and $200 in punitive damages. The Commission also directed remedial action including a general cease and desist order against harassment of Jackson and Stovall or anyone visiting the park because of their race, and some specific steps.[2] Although the Alders denied any liability, these were not challenged as appropriate remedies.

The Alders sought judicial review of the Commission's order in the Cass Superior Court.[3] The trial court found a substantial basis to support the Commission's finding of discrimination against Jackson and its order to pay Jackson for her expenses in moving her mobile home. However, consistent with several decisions of the Court of Appeals,[4] the court found that the Commission had no authority to order compensation for emotional distress or punitive damages, or to order the Alders to pay for the return of Jackson's home to Stoney Pike. The trial court did not address the Alders' contention that Stovall

---

1. At the Commission hearing, Alder denied saying anything about the race of Jackson's guests; however, the hearing officer credited Jackson's testimony. "Alder's demeanor and delivery at the Hearing along with the substance of his testimony and the contradictory testimony of other witnesses leads one reasonably to conclude that he made the statements on 19 April 1990 to Jackson."

2. These included advancing African–American applicants on the waiting list for lots in the park until at least three of the lots are rented and inhabited by African–American adults, providing notice to all residents and applicants of the Park's nondiscriminatory housing practices, advertising for minority tenants and filing compliance and other reports with the Commission through the year 2000.

3. This was proper in 1993. Under Indiana Appellate Rule 4(C), judicial review of Commission decisions now is by direct review in the Court of Appeals.

4. See, e.g., Indiana Civil Rights Comm'n v. Washburn Realtors, Inc., 610 N.E.2d 293 (Ind.Ct.App. 1993); Indiana Civil Rights Comm'n v. Wellington Village Apartments, 594 N.E.2d 518 (Ind.Ct. App.1992); Indiana Civil Rights Comm'n v. Union Township Trustee, 590 N.E.2d 1119 (Ind.Ct. App.1992); Crutcher v. Dabis, 582 N.E.2d 449 (Ind.Ct.App.1991); Indiana Civil Rights Comm'n v. Holman, 177 Ind.App. 648, 380 N.E.2d 1281 (1978).

lacked standing under the Act because he had not been denied housing.

Jackson, Stovall and the Indiana Civil Rights Commission (the "Appellants") appealed arguing that the trial court erred by (1) failing to find that Stovall was denied equal opportunity in housing; (2) finding that there was no substantial basis in law for the Commission to order the Alders to return Jackson's mobile home to its former lot; and (3) finding that there was no substantial basis in law for the Commission to award emotional distress or punitive damages.[5] The Alders did not cross-appeal but contended in their brief that there was no substantial basis to support the Commission's finding of discrimination against Jackson and Stovall or, because the home belonged to Jackson's parents, that Jackson incurred any expenses.[6]

The Court of Appeals held that (1) because Stovall did not apply for housing from the Alders, he did not suffer housing discrimination; (2) the Commission did not have the authority to award damages for emotional distress or punitive damages; (3) the issue of the Commission's authority to order the Alders to move Jackson's mobile home was moot because the home in question no longer exists;[7] and (4) the trial court properly upheld the Commission's award of out-of-pocket expenses to Jackson. *Indiana Civil Rights Comm'n v. Alder*, 689 N.E.2d 1274 (Ind.Ct. App.1997).

We granted the Appellants' petition to transfer and now affirm in part, reverse in part and remand. We hold that (1) Stovall is entitled to relief under the statute as a person aggrieved by a discriminatory practice, (2) the Commission's finding of intentional discrimination against Stovall is supported by substantial evidence and (3) the Commission has authority to award damages for emotional distress to Jackson and Stovall, but (4) the Commission has no authority to award punitive damages and (5) the award of out-of-pocket costs to Stovall is not supported by substantial evidence.

## Standard of Review

■■■■ Review of the Commission's order is governed by the Administrative Orders and Procedures Act.

> The court shall grant relief ... if it determines that a person seeking judicial relief has been prejudiced by an agency action that is:
>
> (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law;
>
> (2) contrary to constitutional right, power, privilege, or immunity;
>
> (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
>
> (4) without observance of procedure required by law; or
>
> (5) unsupported by substantial evidence.

IND.CODE § 4–21.5–5–14(d) (1998). We give deference to the expertise of the agency and will not reverse simply because we may have reached a different result than the Commission. This Court will not reweigh conflicting evidence or judge the credibility of witnesses. *Fuller v. Allison Gas Turbine Div., General*

---

**5.** The Appellants also argue that the Court of Appeals' interpretation of the Civil Rights Law precluding recovery by civil rights plaintiffs for emotional distress damages when victims of other torts are permitted to recover emotional distress damages violates Article I, Section 23 of the Indiana Constitution and the Fourteenth Amendment of the United States Constitution. The Court of Appeals held that there was no Fourteenth Amendment violation and found the state constitutional claim waived. Because we resolve this issue on statutory grounds, we do not address the Commission's constitutional arguments.

**6.** The sum total of the Alders' argument with respect to discrimination against Jackson is: "There was no substantial basis for the ICRC to find that Jackson and Stovall had been discriminated against on the basis of race." With respect to Jackson's recovery for economic losses for moving the mobile home owned by her parents, the Alders' argument is similarly conclusory. Neither argument contains citation to the record or to any legal authority. The Alders' arguments on these issues are insufficient under Appellate Rule 8.3(A)(7) and are waived. *See, e.g., Anderson v. State*, 699 N.E.2d 257, 260 n. 2 (Ind.1998); *Brown v. State*, 698 N.E.2d 1132, 1145 (Ind.1998).

**7.** In their petition for transfer, the Appellants do not contest the Court of Appeals' finding that this issue is moot. Accordingly, we decline to address the issue.

*Motors Corp.*, 670 N.E.2d 64, 67 (Ind.Ct.App. 1996). However, although an agency's interpretation of a statute is entitled to great weight, courts rather than administrative agencies must resolve questions of statutory construction. *Indiana Dep't of Natural Resources v. Town of Syracuse*, 686 N.E.2d 410, 411 (Ind.Ct.App.1997).

■ In sum, the trial court's and this Court's review of the Commission's decision "is limited to consideration of (1) whether there is substantial evidence to support the agency's finding and order and (2) whether the action constitutes an abuse of discretion, is arbitrary, capricious, or in excess of statutory authority." *Indiana Dep't of Envtl. Management v. Conard*, 614 N.E.2d 916, 919 (Ind.1993).

## I. Stovall's Discrimination Claim

The Alders argue that there is no substantial evidence to support the Commission's finding that Stovall was denied equal housing based on race because Stovall had no intention of moving into Stoney Pike and never sought permission from the Alders to move in. This assumes that one must be denied housing to be personally aggrieved by a discriminatory practice. The General Assembly has directed us to construe the Civil Rights Law "broadly to effectuate its purpose" and defined "complainant" as "any individual" "personally aggrieved by a discriminatory practice" IND.CODE §§ 22–9–1–2(f) & 22–9–1–3(n)(1) (1998). Accordingly, the language of this statute does not limit recovery to those who are denied housing as a result of a discriminatory practice. It provides relief to any individual who is "personally aggrieved" by a discriminatory practice.

■ In simple form, the Alders made clear to Jackson that her association with Stovall, an African–American, would require her to leave Stoney Pike. Telling a tenant that he or she may not associate with a person of a specified race is plainly a discriminatory practice and both the tenant and the person with whom he or she associates are aggrieved. The following evidence supports the Commission's conclusion that Stovall was "personally aggrieved" by the Alders' discriminatory practices. Stovall's race was the target of Alders' efforts to remove Jackson, who until her association with Stovall, was permitted to live undisturbed in the park. Jackson testified that she "didn't have any problems with Mr. Adler and his wife" until Jackson and Stovall started seeing each other more frequently and Stovall visited Jackson's home more often. After the Alders' attempted to evict Jackson, Stovall testified that everything "got even worse ... everybody was looking at [me] like, you know, [I was] some type of monster or something." In an effort to allow Jackson to continue living at the park, Stovall discontinued his visits to her home and the two stayed at his home. This is sufficient to support a finding that Stovall was "personally aggrieved" by the Alders' discriminatory practices and, as such, is a proper complainant entitled to recover under the Civil Rights Law.

This conclusion is consistent with federal decisions upholding damage awards to parties other than the party who was denied housing. In construing Indiana's Civil Rights Law we look to federal case law for guidance. *Indiana Civil Rights Comm'n v. Southern Indiana Gas & Elec. Co.*, 648 N.E.2d 674, 680–81 (Ind.Ct.App.1995). In *Secretary of Housing and Urban Development v. Blackwell*, the Eleventh Circuit held that white tenants to whom the vendor leased the house after refusing to close a purchase with African–American purchasers were "aggrieved parties" entitled to damages for economic and emotional losses. 908 F.2d 864, 873 (11th Cir.1990). The white couple testified that although they rented the house unaware of the defendant's refusal to sell the home to the black couple, they suffered embarrassment and the wife suffered stress at her job as a teacher in a multi-racial school as a result of defendant's discrimination and the publicity surrounding it. The court also approved moving costs because the couple had to relocate when the house was sold to the African–American couple. *See also Mountain Side Mobile Estates Partnership v. Secretary of Hous. and Urban Dev.*, 56 F.3d 1243, 1249 (10th Cir.1995) (unrelated adult residing with family in mobile home park had standing as "aggrieved person" to

challenge housing discrimination based on familial status).

Because Stovall was aggrieved by the Alders' discriminatory practices, the Commission was authorized to restore his "losses." *See* IND.CODE § 22–9–1–6(k)(A) (1998). The Commission awarded Stovall $15 in out-of-pocket damages. Based on Stovall's testimony that he had not incurred any economic losses as a result of the case or from Jackson's move, we conclude that there is no substantial evidence to support that award. His emotional distress and punitive damages are discussed below.

## II. The Commission's Authority to Award Damages

After finding that the Alders committed unlawful discriminatory practices, the Commission ordered the Alders to pay compensatory, emotional distress and punitive damages to Stovall and Jackson. The Alders argue that the Commission exceeded its statutory authority in awarding emotional distress and punitive damages to Jackson and Stovall.

 The Civil Rights Law provides that, as a remedy for discriminatory behavior, the Commission may require a person to take "further affirmative action as will effectuate the purpose of this chapter, including but not limited to the power: (A) to restore the complainant's losses incurred as a result of discriminatory treatment, as the commission may deem necessary to assure justice...." IND.CODE § 22–9–1–6(k)(A) (1998). In construing a statute, our primary goal is to determine the intent of the General Assembly. *Smith v. State*, 675 N.E.2d 693, 696 (Ind.1996); *Spaulding v. International Bakers Serv., Inc.*, 550 N.E.2d 307, 309 (Ind. 1990). To this end, we give words their common and ordinary meaning. *Spaulding*, 550 N.E.2d at 309.

### A. *Emotional Distress*

 The General Assembly explicitly authorized the Commission to "restore the complainant's losses incurred as a result of discriminatory treatment" in fashioning a remedy under the Civil Rights Law. A plain reading of this language permits the Commission to award damages to compensate for both economic and emotional distress losses. The statute does not purport to limit the scope of "losses" to economic losses as it does for employment discrimination cases. *See Indiana Civil Rights Comm'n v. Midwest Steel*, 450 N.E.2d 130, 140–41 (Ind.Ct. App.1983) (award in employment cases limited to "wages, salary or commission" under Indiana Code § 22–9–1–6(k)(A)). Instead, the statute's use of the broad term "losses incurred as a result of discrimination" permits the Commission to award an amount of damages that will make a victim of discrimination `whole. Accordingly, we agree with Judge Rucker's dissent that the plain, everyday, and common meaning of the term "losses" includes emotional distress damages. *See Indiana Civil Rights Comm'n v. Alder*, 689 N.E.2d 1274, 1281 (Ind.Ct.App.1997) (Rucker, J., dissenting); *see also Indiana Civil Rights Comm'n v. Washburn Realtors, Inc.*, 610 N.E.2d 293, 297–99 (Ind.Ct.App. 1993) (Rucker, J., dissenting).

This result is consistent with other jurisdictions permitting civil rights agencies to compensate victims for both economic and emotional distress losses, *see* Donald T. Kramer, ed., Annotation, *Recovery of Damages as Remedy for Wrongful Discrimination Under State or Local Civil Rights Provisions*, 85 A.L.R.3d 351, 374 § 8 (1978) (collecting cases), and federal decisions under the Fair Housing Act which permits an Administrative Law Judge to award "actual damages suffered by aggrieved person." *See, e.g., Secretary, HUD on Behalf of Herron v. Blackwell*, 908 F.2d 864 (11th Cir. 1990) (upholding damage awards for economic losses and emotional distress); *Phillips v. Hunter Trails Community Ass'n*, 685 F.2d 184 (7th Cir.1982) (reducing award for emotional distress to $10,000 for each plaintiff and approving $2,675 in actual expenditures). The Commission did not exceed its statutory authority in awarding damages for emotional distress.

### B. *Punitive Damages*

 The Commission also ordered the Alders to pay Jackson $100 and Stovall $200 for punitive damages. The Appellants urge a

broad reading of "losses incurred" to support the award of punitive damages. As explained above, "losses" includes any injury, economic or emotional, suffered as a result of the discrimination. However, the purpose of punitive damages is not to compensate for injury, and punitive damages do not compensate a "loss" of the claimant. Rather, punitive damages are designed to penalize or punish or deter the defendant. *See Carroll v. Statesman Ins. Co.*, 509 N.E.2d 825 (Ind. 1987); *see also* 22 AM.JUR.2D *Damages* § 733 (1988). Moreover, as a general matter, punitive damages require explicit statutory authorization if they are to be recovered under a statutory cause of action. 22 AM.JUR.2D *Damages* § 737 (1988). The plain language of the Civil Rights Law simply does not authorize the Commission to award punitive damages. Particularly in awards authorized to be made by an agency rather than a court, we would not infer authority to award punitive damages in the absence of clear legislative language to that effect.

### Conclusion

In sum, we conclude that the Civil Rights Law confers on the Commission authority to compensate a person aggrieved by discrimination for both economic and emotional losses. To the extent that previous decisions of the Court of Appeals hold to the contrary, they are disapproved.[8] However, the statute does not give the Commission authority to award punitive damages.

The trial court's reversal of the punitive damage awards to Stovall and Jackson is affirmed. This case is remanded to the trial court with direction to reverse the Commission's award of out-of-pocket damages to Stovall and to affirm the Commission in all other respects.

SHEPARD, C.J., and DICKSON, SULLIVAN and SELBY, JJ., concur.