BAILEY, Judge,
Concurring in Result.
Elizabeth, having elected to homeschool her daughter, Alyssa, and to associate with FACES for the purposes of educational and social enrichment, nevertheless filed a complaint with the ICRC concerning FACES’s alleged violation of Alyssa’s civil rights. FACES ended the Bridgewaters’ involvement with the group. Concluding that FACES’s decision to end Alyssa’s membership in the group amounted to retaliation under Indiana’s civil rights laws, the ICRC imposed a $2,500 fine upon FACES and enjoined and mandated certain conduct as the end-point of this dispute between a parent and a religiously-oriented private club. The dispute centered on the child’s dietary needs at a single social event conducted outside the ordinary timeframe of the club’s educational activities.
While I agree with the majority that the ICRC could, within its specialized expertise, find that FACES retaliated against Alyssa, and I agree that the ICRC was not within its authority to impose all of the sanctions it did, I would reach these conclusions on significantly narrower grounds *50 than does the majority. I therefore respectfully concur in result.
As the majority notes, the ICRC is an agency with specialized expertise in the matters that come before it. Ind. Civil Rights Comm’n v. Alder, 714 N.E.2d 632, 635-36 (Ind.1999). Among the ICRC’s areas of expertise are questions of civil rights violations and retaliatory conduct in response to the lodging of complaints raising claims of civil rights violations. Such civil rights violations include discrimination in matters “relating to ... education.” Ind.Code § 22-9-1-3(1). Thus, “[w]e give deference to the expertise of the agency and will not reverse simply because we may have reached a different result than the [ICRC].” Alder, 714 N.E.2d at 635. “However, although an agency’s interpretation of a statute is entitled to great weight, courts rather than administrative agencies must resolve questions of statutory construction.” Id. at 636. As with statutory construction, subject matter jurisdiction is also a purely legal area that we review de novo upon appeal. M-Plan, Inc. v. Ind. Comprehensive Health Ins. Ass’n, 809 N.E.2d 834, 837 (Ind.2004).
What matters “relat[e] to ... education” is left undefined by the Indiana Civil Rights Law (“ICRL”). Arguing over whether the ICRC had jurisdiction to hear the Bridgewaters’ complaint, whether the ICRC had jurisdiction to find that FACES retaliated against the Bridgewaters, and over the scope of the damages to which Alyssa may or may not have been entitled, the parties offer differing interpretations of the statutory language.
Mindful that the ICRL provides that it “shall be construed broadly to effectuate its purpose,” I.C. § 22 — 9—1—2(f), I think this Court can affirm the ICRC’s order for damages against FACES without addressing the definitional and jurisdictional questions associated with the disputed statutory language. This is because, in addition to the statutory authority the ICRC possesses to address claims of discrimination, it also has statutory authority to “prevent any person [9] from discharging, expelling, or otherwise discriminating against any other person because the person filed a complaint, testified in any hearing before this commission, or in any way assisted the commission in any matter under its investigation.” I.C. § 22-9-l-6(g). That is, the ICRL affords a remedy where one person has filed a complaint, as a result of which another person engages in any form of retaliatory conduct against the complainant. Retaliatory conduct is itself discriminatory under the terms of the statute, then, and a remedy may be afforded to an individual harmed by retaliation even where the underlying claim advanced by the complaint is ultimately found to be without merit.
While there is little or no Indiana case law interpreting subsection 22-9-l-6(g) as it applies to retaliation against members of an educational or social-group environment, as FACES appears to be, I think the majority properly adopts the employment-related standards for evaluating a claim and reviewing a finding of retaliation in this context. I therefore concur with the majority to the extent it concludes that the ICRC properly applied this standard and did not act arbitrarily and capriciously when it found that FACES retaliated against the Bridgewaters as a result of Elizabeth’s decision to file a complaint.
I also concur with the majority’s decision to the extent it affirms the ICRC’s *51 $2500 award for damages resulting from FACES’s retaliation. Indeed, because the ICRC found that FACES made reasonable accommodations at the Masquerade Ball for Alyssa’s condition, it is clear from the ICRC’s order that the only reason damages were awarded was the Commission’s finding that FACES’s decision to eject Alyssa from the group was pretextual. That order is consistent with the purpose of a separate remedy for retaliation, which is to ensure that those reporting alleged civil rights violations are protected from retaliation for filing a claim; failure to protect an individual for reporting an alleged violation “ultimately undermines a critically important public policy.” Frampton v. Cent. Ind. Gas Co., 260 Ind. 249, 253, 297 N.E.2d 425, 428 (1973) (establishing a cause of action for retaliatory discharge in at-will employment relationships where an employee alleged that he was subject to retaliation for exercising his statutory right to seek worker’s compensation benefits); see Crawford v. Metro. Gov’t of Nashville and Davidson Cnty., Tenn., 555 U.S. 271, 279, 129 S.Ct. 846, 172 L.Ed.2d 650 (2009) (noting that the “ ‘primary objective’” of the anti-retaliation provisions of Title VII of the Civil Rights Act of 1964 is “ ‘avoiding] harm’ to employees”).
While I concur in these matters, I do so reluctantly. This is so because I do not think that matters “relating to ... education,” as provided by the ICRL, ought to encompass so broad a range of activities as to include a quintessentially social function like the Masquerade Ball. That is especially so where the group offering the social function is not a formal school, but rather a small organization of volunteers who, for thirty days of the year, work together to provide social and other forms of enrichment for children whom they have decided to homeschool.
In this context, I do not think the reach of the ICRL extends so far as to encompass a social activity like the Masquerade Ball. Put more simply: I do not think, based upon the language of the ICRL, that the ICRC would have properly had subject matter jurisdiction over the Bridgewaters’ complaint were it not for FACES’s retaliatory conduct.
It seems to me beyond the pale of the ICRL — a statute enacted in the wake of the upheavals of the Civil Rights Movement of the 1960s — to conclude that such social occasions as a Masquerade Ball, held not under the auspices of a formalized school but by a group of volunteers, are events “relating to ... education” such that a member of FACES is the victim of a civil rights violation when the group will not accommodate her dietary conditions. Thus, to the extent the ICRC’s order would require that FACES readmit Alyssa as a member of the group, I part from the majority and would hold that the order only extends to those activities of FACES that are specifically educational rather than social — that is, FACES’s regularly-scheduled events during which academic enrichment activities like language, computer, and other such classes are offered. While I recognize that we are to interpret the ICRL “broadly to effectuate its purpose,” I would not conclude that, by the statute’s language, its purposes extend so far as to conclude that FACES was required to accommodate Alyssa’s dietary needs at the Masquerade Ball.
That said, I do not agree with FACES that it should be entirely exempt from the ICRC’s jurisdiction. In Bob Jones Univ. v. United States, 461 U.S. 574, 103 S.Ct. 2017, 76 L.Ed.2d 157 (1983), the United States Supreme Court held that the Internal Revenue Service (“IRS”) could revoke the nonprofit tax status of an organization where the IRS’s decision advanced a com- *52 pefiing government interest and the decision “substantially outweigh[ed] whatever burden denial of tax benefits” imposed upon the nonprofit organization, even where the organization implemented those policies on religious grounds. Id. at 604, 103 S.Ct. 2017. In Bob Jones, the question before the Court was whether the IRS could revoke the university’s nonprofit tax status because of its ban on dating and marriage between students of different races, where opposing racial discrimination was recognized as a compelling governmental interest. Id. at 603-605, 103 S.Ct. 2017.
Here, FACES has argued that because it is a religiously-oriented organization, it should be entirely free to add or remove members on nearly any basis. I cannot agree; indeed, to take FACES’s position would be to hold, in a manner implicitly contrary to the Supreme Court in the Bob Jones case, that government agencies could have no role at all in enforcing various laws because those agencies would simply lack jurisdiction over such religiously-minded institutions. It is disingenuous for an organization like FACES to claim the benefits of tax-exempt status, yet ignore with impunity other laws that have an equally broad-ranged effect.
I also part from the majority in its rationale for reversing that portion of the ICRC’s order requiring that FACES post notices on its websites. I think there is no need to turn to constitutional interpretation to resolve this matter, and we should avoid constitutional declarations where other, non-constitutional means are available to resolve a dispute. Founds. of East Chicago, Inc. v. City of East Chicago, 927 N.E.2d 900, 905 (Ind.2010). The ICRL provides the ICRC with authority to require notice posting:
[the ICRC] shall cause to be served ... an order ... requiring the person to take further affirmative action as will effectuate the purposes of this chapter, including but not limited to the power:
[[Image here]]
(B) to require the posting of notice setting forth the public policy of Indiana concerning civil rights and respondent’s compliance with the policy in places of public accommodations.
I.C. § 22-9-1-6(j). A “public accommodation” is “any establishment that caters or offers its services or facilities or goods to the general public.” I.C. § 22-9-1-3(m). Because FACES lacks a fixed meeting location or other premises of its own, the ICRC ordered FACES to post the required notice on any website it operates.
Yet the ICRC has not found that FACES is a place of public accommodation; indeed, the ICRC acknowledged that FACES is religiously oriented, limits its membership, and does not hold itself out as open to the general public. The statute authorizes the ICRC to order posting of a notice “in places of public accommodations.” I.C. § 22—9—1—6(j)(B). FACES has no physical premises, and I would not hold that any website operated by FACES is a place of public accommodation within the meaning of the ICRL, because FACES does not hold itself out as providing services to the general public. See I.C. § 22-9-1-3(m). Because we can properly construe the ICRL to reverse that portion of the order that requires FACES to post notice on its websites, I would not turn to the First Amendment analysis that the majority relies upon to strike the applicable portion of the ICRC’s order here.
Though I concur in result, I am less sanguine than the majority about the likelihood that expressive association will not be chilled by the result we reach today. Recognizing the risk that forced inclusion of members could adversely affect the public or private expression of a group’s prin *53 ciples, the Supreme Court in Boy Scouts of America v. Dale, 530 U.S. 640, 120 S.Ct. 2446, 147 L.Ed.2d 554 (2000), held that forced inclusion of a homosexual Scout leader infringed upon the Boy Scouts of America’s First Amendment right to expressive association when the Boy Scouts had consistently expressed as among its values its opposition to homosexuality.
Here, there was evidence that the Bridgewaters’ involvement with FACES resulted in disorder and interference in the activities of the organization due to Elizabeth’s and Alyssa’s conduct. FACES could have expelled them from membership in the organization, and any order requiring their readmission would have, I think, infringed upon FACES’s First Amendment right to expressive association for, as the Court in Dale observed, “ ‘[freedom of association ... plainly presupposes a freedom not to associate.’ ” Id. at 648, 120 S.Ct. 2446 (quoting Roberts v. United States Jaycees, 468 U.S. 609, 623, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984)). Had the Bridgewaters been expelled from the group before the dispute over the menu at the Masquerade Ball and been advised plainly and honestly that the reason for the expulsion was Elizabeth’s and Alyssa’s disruptive conduct, any attempt at forced reintegration of the Bridgewaters into FACES would have raised serious questions about infringement upon FACES’s right to expressive association.
But that is not what happened here. FACES’s expulsion of the Bridgewaters in this case, the announced reasons for which were the Bridgewaters’ disruptiveness, was found to be retaliatory because of its sequence and timing. And while I concur in the majority’s resolution of the matter, I think it important to state clearly that it is only FACES’s retaliation, as found by the ICRC, that prevents the ICRC’s order from amounting to an infringement upon the group’s right to expressive association.
I think it unfortunate that we have been brought into a private dispute between two religiously-oriented parties who have chosen not to engage the public education system. Yet one seeks to entangle the other in a quest for accommodation typically required of public educational institutions, while the other has organized itself in a way that seeks to exempt the group almost entirely from our state’s civil rights laws while claiming special status under the tax code.
I do not think that the legislature’s broad intent when it enacted our civil rights statutes involved making the ICRC and our courts arbiters of such private disputes as have arisen between FACES and the Bridgewaters. But constrained by the language of the statute and mindful of our obligation to avoid constitutional questions, I reluctantly, but respectfully, concur in result.

. A "person” is defined as “one (1) or more individuals ... associations, organizations ... corporations .,. cooperatives ... and other organized groups of persons.” I.C. § 22-9-1-3 (a).