Jackie Kay WARHURST *v.* William David WHITE, Sr., Administrator of the Estate of William David White, II, Jonathon T. Giles, a Minor, by Elizabeth Blayney, His Mother and Next Friend, and Thomas E. Blayney and Elizabeth Blayney, His Wife, Individually

92-102                                                          838 S.W.2d 350

Supreme Court of Arkansas
Opinion delivered October 5, 1992

*Jake Brick*, for appellant.

*Saxton & Ayers*, by: *Clint Saxton*, for appellees.

TOM GLAZE, Justice. This wrongful death action was initiated by William White, as administrator of his son's, David White's, estate against Jackie Warhurst. David was a passenger on Jonathan Giles' motorcycle when Warhurst backed her vehicle onto a street into the path of Giles' motorcycle. The two vehicles collided, causing David's death and Giles' injuries. Giles, a minor represented by his mother, also filed a claim against Warhurst. Both White and Giles sought punitive damages as well as compensatory damages because Warhurst was legally intoxicated at the time of this unfortunate incident.

At a jury trial, David's estate was awarded $510,000

compensatory and $500,000 punitive damages. Giles received a verdict of $40,000 compensatory and $500,000 punitive damages. The trial judge denied Warhurst's motion for a new trial. Afterwards, Warhurst's insurance carrier paid all of Giles' compensatory damages and $50,000 of David's compensatory damages. Warhurst now appeals the unpaid balance, challenging the damage amounts awarded by the jury.

Warhurst first argues the trial court erred by admitting into evidence four poems written by David's mother after his death. Warhurst also claims the trial court should have excluded from evidence a copy of a tombstone design containing words selected by his parents. Citing *Toney* v. *Raines*, 224 Ark. 692, 275 S.W.2d 771 (1955), Warhurst argues that generally a party cannot make evidence for himself by his own declarations, and it is a well-established rule that a statement of a party, whether oral or written, which is of a self-serving nature is not admissible in evidence in his favor. She further states the rule excluding self-serving declarations is a part of the hearsay rule, and its purpose is to prevent the manufacturing of evidence. In sum, Warhurst says the poems and tombstone epitaph were excludable hearsay which was both irrelevant and prejudicial.

Warhurst's argument ignores that David's estate sought damages for mental anguish, and accordingly, the jury was read twelve of the thirteen factors listed in AMI Instruction 2216, which the jury could consider when assessing compensation for mental anguish factors. Those factors particularly relevant here were the following:

(a) The duration and intimacy of the relationship and the ties of affection between the deceased and the survivor;

(b) The frequency of association and communication;

(c) The attitude of the deceased toward a survivor and a survivor toward a deceased;

(d) The duration and intensity of the sorrow and grief;

*      *      *

(f) The violence and suddenness of the death.

In meeting its burden, David's estate utilized the

state-of-mind hearsay exception rule, Ark. R. Evid. 803(3), to show David's parents' existing state of mind, emotion, sensation, or physical condition. Such exception has been recognized as being available to a plaintiff in a civil damage action as a means of establishing his or her mental anguish as an element of damages. D. Louisell and C. Mueller, *Federal Evidence*, § 441 (1980). It has been held that the self-serving nature of a declaration only goes to its weight, and not its admissibility. *See United States* v. *DiMaria*, 727 F.2d 265 (2d Cir. 1984). We will not reverse a trial court's ruling on the admission of evidence absent abuse of discretion. *Younts* v. *Baldor Electric Co.*, 310 Ark. 86, 832 S.W.2d 832 (1992). Here, the poems and epitaph presented by David's estate were admissible and relevant under Ark. R. Evid. Rule 803(3) on the mental anguish issue, and we cannot say that the trial court abused its discretion in allowing such evidence.

For her second point of reversal, Warhurst contends the trial court erred in allowing expert witnesses, testifying on Warhurst's blood alcohol level, to rely upon the breathalyzer test given her after the collision. The trial court had excluded from evidence the breathalyzer test, showing Warhurst's blood alcohol level at .13, because the officer's machine had not been properly calibrated. Although Warhurst argues she objected to the expert witnesses' reliance on the test, the record fails to support her contention.

Counsel for Warhurst moved in limine to exclude any testimony concerning the .13 breathalyzer test record made from testing Warhurst after the collision, but the trial court indicated it was inclined to allow such testimony. In finally ruling to allow such testimony, the following colloquy between the court and counsel took place:

> White's counsel: I understand what the Court is saying. If you will look at the cases, it does say that the expert should be allowed to give what the basis of that is because otherwise it can be left out there —

> The Court: The basis would be that they reviewed the test results.

> Warhurst's counsel: As I understand the Court, I would have *no argument* with that if they will adhere to the fact that the test result should not be mentioned insofar as

.13, and of course they would have to delete [it] from Mrs. Horne's deposition which is an evidentiary deposition — (emphasis added).

■■ The experts, in giving their testimony, relied in part upon the breathalyzer test given Warhurst, but made no reference to the .13 test results. Warhurst's objection reveals she had no disagreement with the trial court's ruling to permit expert testimony concerning Warhurst's blood alcohol level except the .13 breathalyzer test results should not be mentioned. This court has stated repeatedly that a party cannot change grounds for an objection on appeal. *Mine Creek Contractors, Inc.* v. *Grandstaff*, 300 Ark. 516, 780 S.W.2d 543 (1989). In the last analysis, Warhurst's objection sought to exclude any mention of the .13 rating, not to prevent the experts from offering opinion testimony that was partially based upon the test given her. Because Warhurst obtained what she requested form the trial court below, we need not address the new or different argument she now argues on appeal.

■■ In her final point, appellant argues the trial court erred in failing to set aside the compensatory and punitive damages as excessive. When this question is before us, we must study the proof, viewing it most favorably to the appellee, and decide the question of whether the verdict is so great as to shock the conscience of the court or to demonstrate passion or prejudice on the part of the trier of fact. *Matthews* v. *Rodgers*, 279 Ark. 328, 651 S.W.2d 453 (1983). This court has often held that the jury has great discretion in determining the amount of damages in wrongful death cases. *See Jefferson Hosp. Ass'n* v. *Garrett*, 304 Ark. 679, 804 S.W.2d 711 (1991). Also, in a recent case where a judgment amount for bodily injuries was argued as excessive, we held that, in determining whether the amount was so great as to shock the conscience, we consider such elements as past and future medical expenses, permanent injury, loss of earning capacity, scars resulting in disfigurement, and pain, suffering, and mental anguish. *Gibson* v. *Garrison*, 308 Ark. 344, 824 S.W.2d 901 (1992).

■ David's estate and Giles offered extensive evidence bearing on their compensatory damages. David's estate incurred funeral and medical expenses in the amount of $10,216.33. Giles

incurred medical expenses in the amount of $2,493.23. Both young men were fifteen-years-old at the time of the incident, and considerable testimony was elicited concerning the Whites' mental anguish over the loss of their son, David. From our review of the evidence, we are unable to say the compensatory damages awarded David's estate, $510,000, or Giles, $40,000, shocks our conscience.

■ Nor do we believe the punitive damage awards should be set aside. There is no fixed standard for the measurement of punitive damages. *Matthews*, 279 Ark. 328, 651 S.W.2d 453. Such damages constitute a penalty and must be sufficient not only to deter similar conduct on the part of the same tortfeasor, but they must be sufficient to deter any others who might engage in similar conduct. *Id*. Punitive damages may amount to somewhat of a windfall to the plaintiff and the amount of actual damages sustained by the plaintiff is but one criterion for the assessment of punitive damages. Lastly, we have held that the defendant's financial wealth is a proper element to be considered in the computation of punitive damages. *Id*.

■ Warhurst basically told the jury that she had nothing of value and depended upon her $350 per week salary for living expenses. In suggesting the punitive damages here are in line with this court's prior cases, David's estate and Giles both point to our recent case of *B & F Engineering, Inc. v. Cotroneo*, 309 Ark. 175, 830 S.W.2d 835 (1992), wherein this court affirmed a punitive award of one million dollars to Mr. Cotroneo who suffered injuries resulting from an accident caused by an intoxicated driver. David's estate also sets out testimony of Warhurst from which it says the jury could easily infer and conclude Warhurst lacked any remorse. In the same vein, Warhurst claimed throughout the ordeal that she was totally innocent and without fault. David's estate sought punitive damages in excess of one million dollars, and argues the jury weighed, as instructed, all factors in awarding one-half the amount the injured parties requested. Considering the dual purpose served in assessing punitive damages, we uphold the trial court's refusal to set aside the punitive damages.

We affirm.

HAYS and CORBIN, JJ., concur as to point one because the

poems and epitaph were not abstracted.