COMMISSIONER, Indiana DEPART-
MENT OF ENVIRONMENTAL MAN-
AGEMENT, Appellant (Plaintiff Be-
low),

v.

RLG, INC. and Lawrence Roseman d/b/a
Spring Landfill and Lawrence Rose-
man, et al., Appellee (Defendant Be-
low).

No. 27S02–0102–CV–101.

Supreme Court of Indiana.

Sept. 24, 2001.

Karen M. Freeman–Wilson, Attorney General of Indiana, Anita Wylie, Deputy Attorney General, Indianapolis, IN, Attorneys For Appellant.

Albert C. Harker, Marion, IN, Attorney For Appellee.

## ON PETITION TO TRANSFER

BOEHM, Justice.

We hold that under some circumstances, including those here, an individual associated with a corporation may be personally liable under the responsible corporate officer doctrine for that corporation's violations of the Indiana Environmental Management Act, whether or not the traditional doctrine of piercing the corporate veil would produce personal liability.

### Factual and Procedural Background

On August 26, 1993, the Indiana Department of Environmental Management (IDEM) initiated action against RLG, Inc. and Lawrence Roseman for violations of the Indiana Environmental Management Act at RLG's Spring Valley Landfill in Wabash, Indiana.[1] IDEM sought preliminary and permanent injunctive relief as well as civil penalties. In response, RLG negotiated agreements to remedy the violations and to close the landfill and provide a post closure plan, all by specified dates.[2] In return, IDEM agreed to drop its claim for other relief, including civil penalties. In March 1994, an environmental scientist inspected the landfill and found that the initial violations had not been remedied, and also that the subsequent agreements had been breached. In May 1994, the trial court found that RLG had failed to comply with the agreements in several respects and granted IDEM's motion for prejudgment possession and a temporary restraining order. RLG was found in contempt and ordered to pay $5,000 per day as a civil penalty until it complied with the agreements. In July 1994, IDEM filed a second amended complaint with an additional count seeking to impose personal liability on Roseman based upon his status as the sole corporate officer of RLG. Roseman filed answers to IDEM's interrogatories that disclosed that RLG was insolvent.

After RLG failed to answer the second amended complaint, a default judgment was entered against it and civil penalties were assessed at $5,000 per day from the date of the temporary restraining order for a total of $3,175,000. IDEM was also granted access to the landfill to undertake remediation. In June 1999, after a bench trial on the issue of Roseman's personal liability for civil penalties, judgment was entered in favor of Roseman. At Roseman's request the trial court entered findings of fact and conclusions of law. These included: "There is no evidence the defendant Larry Roseman ever acted in an individual capacity personally with respect to the activities which surrounded the management and operation of RLG, Inc." or "in activities surround[ing] the environmental regulations." Further, "[a]s a matter of law, ... defendant Larry Roseman [is not] personally liable [for] acts done as a corporate officer for defendant RLG, Inc." and is not "personally liable for the corporate debts of defendant." The Court of Appeals agreed with the trial court, holding that the importance of the corpo-

---

1. An August 1993 affidavit signed by an inspector for IDEM lists RLG's violations as the following: (1) litter over the site, Ind. Admin. Code tit. 329, r. 2–14–4 (repealed 1996); (2) failure to submit statistical analysis concerning groundwater data, I.A.C. 2–16–5; (3) presence of organics in the groundwater at the site, I.A.C. 2–16–2(a); (4) failure to submit an adequate groundwater sampling and analysis plan, I.A.C. 2–16–2(a); and (5) failure to submit a closure plan, I.A.C. 2–15.

2. The agreements RLG entered into in February of 1994 included the obligations to "locat[e] active leachate seepage points at the Site," "initiate winterizing patches ... to address the active leachate seepage points," "initiate erosion controls ... necessary to effectively remediate or prevent off-site migration of cover soils at the Site," and "to initiate discussion with IDEM regarding hydrogeological issues."

rate structure and a lack of evidence of Roseman's individual involvement in the environmental violations precluded personal liability for the acts of RLG. *Comm'r, Indiana Dep't of Envtl. Mgmt. v. RLG, Inc.*, 735 N.E.2d 290, 299 (Ind.Ct.App. 2000).

## Standard of Review

 On appeal from a negative judgment, this Court does not reverse the judgment of the trial court unless it is contrary to law. *Pepinsky v. Monroe County Council*, 461 N.E.2d 128, 135 (Ind. 1984); *accord Marquez v. Mayer*, 727 N.E.2d 768, 773–74 (Ind.Ct.App.2000), *trans. denied.* This Court considers the evidence in the light most favorable to the appellee and will reverse the judgment only if the evidence leads to but one conclusion and the trial court reached an opposite conclusion. *Id.*

## I. Theories of Individual Liability

 In general, a corporate officer or employee is not individually liable for the corporation's actions, and an office or corporate status, even a very senior one, does not in itself expose an individual to personal liability. However, three distinct doctrines bear on potential individual liability under Indiana environmental management laws. In overview, an individual, though acting in a corporate capacity as an officer, director, or employee, may be individually liable either as a responsible corporate officer, as a direct participant under general legal principles, or under specific statutes or provisions. These doctrines can apply to both criminal and civil liability, though their application in either context varies with the circumstances. Of course, if the corporation is financially responsible, and the terms of its indemnification of officers and employees are met, individual liability for civil penalties may be largely academic. But the law has developed these bases of individual responsibility to heighten attention to compliance and also to remove the ability of fly-by-night operators to escape reimbursing the public cost of irresponsible operations.

### A. The Responsible Corporate Officer Doctrine

The responsible corporate officer doctrine stems from a 1943 United States Supreme Court case in which the Court interpreted the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301–92 (1938), to permit criminal liability to be imposed on any person within a corporation "responsible" for introducing an adulterated or misbranded drug into interstate commerce. *United States v. Dotterweich*, 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48 (1943). "[An] offense is committed . . . by all who do have such a responsible share in the furtherance of the transaction which the statute outlaws. . . ." *Id.* at 284, 64 S.Ct. 134. The Court reasoned, "[T]he only way in which a corporation can act is through the individuals who act on its behalf." *Id.* at 281, 64 S.Ct. 134. This liability was justified on the basis that the Food, Drug, and Cosmetic Act "touch[es] phases of the lives and health of people which, in the circumstances of modern industrialism, are largely beyond self-protection." *Id.* at 280, 64 S.Ct. 134.

In *United States v. Park*, 421 U.S. 658, 673–74, 95 S.Ct. 1903, 44 L.Ed.2d 489 (1975), the Supreme Court, drawing on *Dotterweich*, concluded that the government establishes a prima facie violation of the Food, Drug, and Cosmetic Act as a responsible corporate officer when:

> it introduces evidence sufficient to warrant a finding by the trier of the facts that the defendant had, by reason of his position in the corporation, responsibility and authority either to prevent in the first instance, or promptly to correct,

the violation complained of, and that he failed to do so.

The responsible corporate officer doctrine has been applied to public welfare offenses if "a statute is intended to improve the common good and the legislature eliminates the normal requirement for culpable intent, resulting in strict liability for all those who have a responsible share in the offense." *Matter of Dougherty*, 482 N.W.2d 485, 489 (Minn.Ct.App.1992).

Although it originated as a criminal law doctrine, the responsible corporate officer doctrine has been applied to civil liability under a number of federal statutes. *See United States v. Northeastern Pharm. & Chem. Co.*, 810 F.2d 726, 743–44 (8th Cir. 1986) (addressing personal liability under Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA)); *United States v. Hodges X–Ray, Inc.*, 759 F.2d 557, 560–61 (6th Cir.1985) (assessing a violation of the Radiation Control for Health and Safety Act (RCHSA): "The fact that a corporate officer could be subjected to criminal punishment upon a showing of a responsible relationship to the acts of a corporation that violate health and safety statutes renders civil liability appropriate as well."); *United States v. Conservation Chem. Co.*, 660 F.Supp. 1236, 1245–46 (N.D.Ind.1987) (president and principal stockholder of corporation operating hazardous waste facility in Gary, Indiana may be personally liable for violation of Resource Conservation and Recovery Act (RCRA)).

Similarly, several states have adopted the responsible corporate officer doctrine as appropriate under state legislation addressing public safety, in particular, disposal of hazardous waste. *Matter of Dougherty*, 482 N.W.2d at 488–90 (Minnesota's hazardous waste laws are public welfare statutes and subject to the responsible corporate officer doctrine); *State ex rel.* *Webster v. Mo. Resource Recovery, Inc.*, 825 S.W.2d 916, 924–26 (Mo.Ct.App.1992) (applying doctrine to Missouri's Hazardous Waste Management Law); *State, Dep't of Ecology v. Lundgren*, 94 Wash.App. 236, 971 P.2d 948, 951–53 (1999) (sole shareholder of corporation that operated sewage treatment plant is personally liable for violation of Washington's Water Pollution Control Act); *State v. Rollfink*, 162 Wis.2d 121, 475 N.W.2d 575, 576 (1991) (corporate officer may be held personally liable for violations of Wisconsin's solid and hazardous waste laws if the "officer is responsible for the overall operation of the corporation's facility which violated the law").

B. *Individual Liability as a Participant*

■ As a matter of general criminal law, an individual who participates in a criminal violation is criminally responsible even if acting in a corporate capacity. *See Doyle v. State*, 468 N.E.2d 528, 542 (Ind. Ct.App.1984), *trans. denied.* The same is true of civil tort liability. *See Civil Rights Comm'n v. County Line Park, Inc.*, 738 N.E.2d 1044, 1050 (Ind.2000) ( "[A corporate] officer is personally liable for the torts in which she has participated or which she has authorized or directed.").

C. *Statutory Liability under Environmental Management Laws*

■ Under Indiana Code section 13–30– 6–4, "A responsible corporate officer may be prosecuted for a violation of section 1, 2, or 3 of this chapter in accordance with IC 35–41–2–4." The criminal code section to which this refers is the general "aiding and abetting" statute, which provides that one who aids a crime commits that crime. Under these provisions, aiding or directing a crime, if done "intentionally or knowingly" is sufficient to support criminal responsibility under Indiana Code sections 13–

30–6–4 and 35–41–2–4. *See Tobar v. State,* 740 N.E.2d 109, 112 (Ind.2000). The landfill violations would have constituted a violation of Indiana Code section 13–30–6–1. Statutory civil liability is more expansive than criminal liability. Unlike the criminal liability provision in the environmental management laws, the provision imposing civil liability has no "mens rea" requirement of knowledge or willfulness. Indiana Code section 13–30–4–1 imposes civil liability on "a person who violates" environmental management laws. A "person," for purposes of environmental management laws, includes "an individual, a partnership, a copartnership, a firm, a company, a corporation...." Ind.Code § 13–11–2–158 (1998). Both general legal principles and the language of the statute support the conclusion that an individual acting for a corporation participating in a violation of a statute listed in Indiana Code section 13–30–4–1 may be individually liable for civil penalties under that section, and, if acting with the requisite mens rea, may be criminally responsible for violations of Indiana Code sections 13–30–6–1 through 3. As elaborated in Part II, Roseman is individually liable under all three of the theories discussed in this section.

## II. Roseman's Liability

### A. *Roseman as a Responsible Corporate Officer*

■ The Court of Appeals determined that it was unnecessary either to adopt or reject the responsible corporate officer doctrine because the court found the evidence inadequate to establish Roseman as a responsible party under *Park,* as formulated in *Dougherty. RLG,* 735 N.E.2d at 299. We disagree. Roseman was the sole shareholder of RLG, Inc., which operated the Spring Valley Landfill. As Indiana corporate law allows in a company with only one shareholder, Roseman was the single director. From RLG's inception in 1988, Roseman served as its only corporate officer, holding the offices of president, secretary, and treasurer. As is typical of a single shareholder corporation, only Roseman appears in the corporate minutes in any capacity.

These factors, individually or collectively, are not enough to establish individual liability under the responsible corporate officer doctrine. It is not Roseman's status as officer, director, or sole shareholder of RLG that is determinative under this theory. Each of these in itself may be sufficiently removed from the relevant corporate activities that the individual is not a "responsible corporate officer" despite high corporate office. Rather it is Roseman's direction of and involvement in operating the landfill, his representation to IDEM that he was the responsible party, and his actual role in the corporation's activities that are critical.

■ *Matter of Dougherty,* 482 N.W.2d 485, 490 (Minn.Ct.App.1992), formulated the standard of a responsible corporate officer as:

(1) the individual must be in a position of responsibility which allows the person to influence corporate policies or activities; (2) there must be a nexus between the individual's position and the violation in question such that the individual could have influenced the corporate actions which constituted the violations; and (3) the individual's actions or inactions facilitated the violations.

This is a fair restatement of the responsible corporate officer doctrine as articulated in *United States v. Park,* 421 U.S. 658, 673–74, 95 S.Ct. 1903, 44 L.Ed.2d 489 (1975). Roseman meets all these criteria. He plainly had a position that allowed him to influence RLG's policies and functions. Indeed, he dominated the corporation. He also designated himself as the responsible

party in the solid waste permit application, establishing the necessary nexus between his position and environmental compliance. Finally, his acts facilitated the violation.

The facts of this case are analogous to *Dougherty*, where the Minnesota Court of Appeals based responsible corporate officer liability on findings that the defendant "was in a position of responsibility as president and primary emergency coordinator," that the violations were within his "sphere of influence," that he "was the primary contact with all regulatory bodies concerning hazardous waste," and that he "failed to prevent the violations and take proper corrective action once the violations occurred." *Dougherty*, 482 N.W.2d at 490. Here there is no subordinate or intermediate officer principally responsible for compliance, and Roseman was directly involved in at least some corporate activities. Either may be sufficient, and in concert they demonstrate that Roseman had both the responsibility and authority to prevent the IEMA violations in the first instance and to correct the violations once they were brought to his attention. *Cf. Park*, 421 U.S. at 673–74, 95 S.Ct. 1903. In any event, Roseman's voluntary assumption of the role of responsible party is also sufficient. When Roseman signed IDEM's character disclosure statement, he did not cite the corporation's activities to demonstrate its capacity to operate a proposed landfill. Rather he pointed to his own individual experience as "Director" of a landfill for three years as fulfilling the requirement of experience of the "appli-

cant". Thus, by his own admission, he was the party responsible for the landfill's operations, and held himself out as the responsible party in obtaining the permit.

### B. *Roseman's Individual Participation and Statutory Liability*

■ Corporate status was not Roseman's only involvement in the IEMA violations. According to Jim Ritchie, who operated a bulldozer and backhoe at the landfill from April 1990 until April 1991, Roseman was at the landfill site approximately five days per month, and Roseman ordered the landfill's manager and Ritchie to "landfill garbage outside of the permitted landfill contours." This was evidence of Roseman's direct participation in the environmental violation.

Equally important, the environmental laws require that there be a "Responsible Party" incident to the permitting of a landfill.[3] When RLG filled out IDEM's "Waste Facility Character Disclosure Statement" in 1991, Roseman listed RLG in Section D as the "Responsible Party," but signed his own name as the "Applicant/Responsible Party." Section D2 of that form also requires the applicant or responsible party to list his, her, or its experience in managing the type of waste for which the permit was sought. Significantly, Roseman listed his individual three years of experience as director of Spring Valley Landfill as supplying the "Responsible Party's" experience in waste management at the contemplated site. Finally, once the violations became the subject of

---

**3.** "Responsible Party" for purposes of Indiana Code section 13–19–4 (formerly section 13–7–10.2), the section under which Roseman filed for a solid waste permit, means:

 (1) an officer, a corporation director, or a senior management official of a corporation, partnership, limited liability company, or business association that is an applicant; or

 (2) an individual, a corporation, a limited liability company, a partnership, or a business association that owns, directly or indirectly, at least a twenty percent (20%) interest in the applicant.

Ind.Code § 13–11–2–191(a) (1998).

court order, Roseman, who had sole, ultimate control over RLG, did not act to correct them.

The trial court's findings did not address Ritchie's affidavit describing Roseman's direct involvement in placing the garbage outside the permitted area, or the fact that Roseman represented himself, not RLG, to be the "Responsible Party" with three years experience as director of the landfill. All of these are documented and essentially indisputable. The Court of Appeals observed that "[t]he evidence discloses [only] that Roseman conducted himself as a corporate officer." *RLG,* 735 N.E.2d at 299. But that circumstance addresses only the piercing of the corporate veil and does not in itself eliminate liability under Indiana statute or the responsible corporate officer doctrine. Finally, Ritchie's uncontradicted affidavit established that Roseman directly supervised at least some of the landfill's daily unlawful waste disposal activities. This undisputed evidence of Roseman's active involvement in the violations is also sufficient to impose personal liability.

### III. Personal Liability and Piercing the Corporate Veil

 Roseman argues that an important cornerstone of Indiana law is respect for the corporate form, and that he may not be held personally liable unless RLG disregarded corporate structure and served as a mere instrumentality for his own business sufficient to pierce the corporate veil. We do not agree that Roseman's liability depends on piercing the corporate veil. In general, that doctrine holds individuals liable for corporate actions based on the failure to observe corporate formalities. *Aronson v. Price,* 644 N.E.2d 864, 867 (Ind.1994). The corporate veil is pierced only where it is clear that the corporation is merely a shell for conducting the defendant's own business and where the misuse of the corporate form

constitutes a fraud or promotes injustice. *Id.* Unlike the responsible corporate office doctrine, or specific statutory liability, veil piercing is not dependent on the nature of the liability. In contrast, Roseman's liability here is essentially based on his individual participation in the violations, their character as violations of laws affecting public health, and specific statutory liability. The responsible corporate officer doctrine is distinct from piercing the corporate veil, and explicitly expands liability beyond veil piercing. *See United States v. Dotterweich,* 320 U.S. 277, 282, 64 S.Ct. 134, 88 L.Ed. 48 (1943) ("If the [FDCA] were construed [to limit liability to the corporation], the penalties of the law could be imposed only in the rare case where the corporation is merely an individual's alter ego."). The same is plainly true of statutory liabilities. We agree that the record in this case does not support piercing the corporate veil. Roseman is entitled to the benefit of corporate limited liability even if he owned all of the shares of RLG and was its only officer and director. A corporate officer is not liable simply because of his position within the corporation. *United States v. Park,* 421 U.S. 658, 674, 95 S.Ct. 1903, 44 L.Ed.2d 489 (1975). A corporate officer may, however, be held personally liable if he was actively involved in the activity that violates the statute. *United States v. Conservation Chem. Co.,* 733 F.Supp. 1215, 1221 (N.D.Ind.1989). For the reasons discussed in Part II, Roseman is also liable under Indiana's Environmental Management Act.

### Conclusion

For all these reasons, we conclude that Roseman may be held personally liable for civil penalties for the violations committed at the Spring Valley Landfill and the resulting remediation costs. The judgment of the trial court is reversed and remanded for entry of judgment in favor of IDEM

and against Roseman in the amount of the default judgment of $3,175,000.

SHEPARD, C.J., and DICKSON, SULLIVAN, and RUCKER, JJ., concur.