Matthew W. STROUD and Margaret A. Stroud, Appellants–Defendants,

v.

Trevor A. LINTS, Daniel M. Lints, and Vicki Lints, Individually and as Parents/Natural Guardians of Trevor A. Lints., Appellees–Plaintiffs.

No. 20A04–0010–CV–458.

Court of Appeals of Indiana.

Jan. 16, 2002.

Robert T. Sanders, III, Sanders, Pianowski, LLP, Elkhart, IN, Attorney for Appellants.

John D. Ulmer, Bodie J. Stegelmann, Yoder, Ainlay, Ulmer & Buckingham, LLP, Goshen, IN, Attorneys for Appellees.

## OPINION

BARNES, Judge.

### Case Summary

Matthew Stroud appeals the trial court's award of $500,000 in punitive damages against him in favor of Trevor Lints in Lints' action seeking recovery for injuries sustained in an automobile accident caused by Stroud. Lints cross-appeals the trial court's finding that he was twenty-five percent at fault for his injuries and that Stroud's mother was not liable for the punitive damages award. We affirm in all respects.

### Issues

Stroud has listed six issues, but they may be restated as one basic issue: whether the punitive damages award is clearly excessive. Lints' two cross-appeal issues are:

I. whether Stroud's mother should have been held liable for the punitive damages award because she signed Stroud's driver's license application pursuant to Indiana Code Section 9–24–9–4(a); and

II. whether Stroud presented sufficient evidence that Lints was twenty-five percent comparatively at fault for his injuries.

### Facts[1]

The facts most favorable to the judgment reveal that on July 23, 1996, high

---

1. We heard oral argument in the beautifully restored Kosciusko County Courthouse on

school classmates Stroud and Lints went to the Elkhart County Fair. They brought with them mixed drinks of Gatorade and vodka, which they both drank during the afternoon and evening. Despite the fact that he knew Stroud had been drinking, Lints asked Stroud for a ride home. Stroud began driving at a high speed on County Road 28. As he approached an intersection, he passed a stopped line of traffic, disregarded a stop sign, and collided with another vehicle while traveling an estimated ninety-four miles per hour. The two occupants of the other vehicle were killed. Lints suffered extensive injuries, including various skull fractures, fractures of both arms, lacerations, and a severe closed-head injury. He was in a coma for almost one week and remained hospitalized for approximately six weeks. A doctor later determined that Lints had a twenty-three percent permanent physical impairment of his whole person as a result of the accident. Lints also claims the head injury has resulted in continuing "cognitive inefficiencies," including memory, attention, and concentration problems. Record pp. 411, 580.

Stroud was charged with six criminal counts related to the accident, including one count of operating while intoxicated ("OWI") and causing serious bodily injury to Lints in violation of Indiana Code Section 9–30–5–4, a Class D felony. Stroud pled guilty to all six counts and was initially sentenced on June 12, 1997, to eight years of incarceration; he received three years on the count related to Lints, to be served concurrently with the eight-year sentences on the two counts of OWI resulting in death. On June 10, 1999, Stroud's petition for modification of his sentence was granted, which allowed him to serve the rest of his incarceration period on work release.

On June 10, 1998, Lints and his parents sued Stroud and his mother, who had signed Stroud's minor driver's license application. After a bench trial, the trial court entered judgment, without special findings, on September 12, 2000. It found Lints' total compensatory damages to be $1,842,000; however, it also found Lints was twenty-five percent at fault for his injuries and entered judgment against Stroud and his mother for $1,381,500 in compensatory damages. It also found Lints' parents were entitled to $100,000 in compensatory damages, after taking Lints' comparative fault into account. Finally, it assessed $500,000 in punitive damages against Stroud only. Stroud and Lints now both appeal.

## Analysis

### I. Punitive Damages

 The standard of review for determining whether punitive damages were properly awarded is whether, considering only the probative evidence and the reasonable inferences supporting the judgment, without weighing evidence or assessing witness credibility, a reasonable trier of fact could find by clear and convincing evidence that the defendant acted with malice, fraud, gross negligence or oppressiveness that was not the result of a mistake of fact or law, honest error of judgment, overzealousness, mere negligence, or other human failing. *Executive Builders, Inc. v. Trisler*, 741 N.E.2d 351, 360 (Ind. Ct.App.2000), *trans. denied, cert. pending*. Punitive damages may also be awarded upon a showing of willful and wanton misconduct. *Mitchell v. Stevenson*, 677 N.E.2d 551, 564 (Ind.Ct.App.1997), *trans.*

November 8, 2001. We thank counsel for their excellent presentations and appreciate the hospitality and assistance of Kosciusko Circuit Court Judge Rex Reed, Scott Lennox, Ronald Robinson, and the Kosciusko County Bar Association.

*denied.* Stroud makes no argument that punitive damages were entirely inappropriate. He concedes, therefore, that some punitive damages were appropriate here; his argument is focused on the award's amount.

As to the standard of review as to the *amount* of punitive damages, numerous Indiana cases have discussed various factors to consider when reviewing the amount of punitive damages, but few have clearly articulated the level of deference given to a trial court's or jury's assessment as to the appropriate amount of such damages. Generally, Indiana courts will not reverse an award of punitive damages as being excessive unless the damages appear so unreasonable as to indicate that the fact finder was motivated by passion or prejudice. *Archem, Inc. v. Simo,* 549 N.E.2d 1054, 1061 (Ind.Ct.App.1990), *trans. denied.* A judgment awarding punitive damages that is a product of fair procedures is cloaked with a strong presumption of validity. *Coachmen Industries, Inc. v. Dunn,* 719 N.E.2d 1271, 1278 (Ind.Ct.App. 1999), *trans. denied.* Finally, we have stated that "[o]nce it has been determined that there is a legal basis upon which to premise an award of punitive damages, the amount of the award rests within *the sound discretion* of the [fact finder]." *Arlington State Bank v. Colvin,* 545 N.E.2d 572, 580 (Ind.Ct.App.1989) (emphasis added). Stroud makes no argument that the trial court was motivated by passion or prejudice, nor that unfair procedures were used in procuring the judgment. That being the case, the amount of the award rested within the trial court's sound discretion, and we will review the award for an abuse of that discretion. An abuse of discretion has occurred if the trial court's

decision is against the logic and effect of the facts and circumstances or the reasonable inferences therefrom, or if the trial court's decision is without reason or based upon impermissible reasons or considerations. *DeVittorio v. Werker Bros., Inc.,* 634 N.E.2d 528, 530 (Ind.Ct.App.1994).

At oral argument, counsel for Stroud directed us to the recent Supreme Court case of *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.,* 532 U.S. 424, 121 S.Ct. 1678, 1685–86, 149 L.Ed.2d 674 (2001), where it was held that appellate courts should apply a de novo standard of review when reviewing whether a punitive damages award is excessive under the Due Process Clause of the Fourteenth Amendment and the parameters of *BMW of North America, Inc. v. Gore,* 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). Stroud has not argued, however, that the punitive damages award in this case is constitutionally excessive. The *Cooper* opinion states that "[i]f no constitutional issue is raised, the role of the appellate court, at least in the federal system, is merely to review the trial court's determination under an abuse-of-discretion standard." 532 U.S. at 432, 121 S.Ct. at 1684. This is consistent with the Indiana common law standard for reviewing the amount of a punitive damages award and it is the standard we apply today.[2]

"The purpose of punitive damages is to punish the wrongdoer and thereby deter others from engaging in similar conduct." *Bright v. Kuehl,* 650 N.E.2d 311, 316 (Ind.Ct.App.1995). Three factors that we may consider when addressing whether an award of punitive damages is excessive are: (1) the degree of reprehensibility of the conduct at issue; (2) the

---

2. We believe, however, that we may refer to the *BMW* case and the factors it identified for reviewing punitive damages awards as instructive when conducting a common law excessiveness review.

disparity between the harm or potential harm suffered by the complaining party and the punitive damages the complaining party received; and (3) the difference between the punitive damages remedy and the civil and criminal penalties authorized or imposed in comparable cases. *Ford Motor Co. v. Ammerman,* 705 N.E.2d 539, 561–62 (Ind.Ct.App.1999), (citing *BMW,* 517 U.S. at 574–75, 116 S.Ct. at 1598–99), *trans. denied, cert. denied,* 529 U.S. 1021, 120 S.Ct. 1424, 146 L.Ed.2d 315 (2000). It has also been said, under Indiana common law, that there "are two primary factors which should be properly considered in reviewing an award of punitive damages: (1) the nature of the tort and the extent of the actual damages sustained; and (2) the economic wealth of the defendant." *Bright,* 650 N.E.2d at 316. We observe that part one of this test is actually two parts, and that it corresponds closely with the first two parts of the *BMW* test: the reprehensibility of the defendant's conduct and the disparity between compensatory and punitive damages; thus, under Indiana law, the defendant's economic wealth is the only non-*BMW* factor to be considered by the fact finder.

■ The *BMW* opinion states that "[p]erhaps the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." 517 U.S. at 575, 116 S.Ct. at 1599. The Court, in concluding that "none of the aggravating factors associated with particularly reprehensible conduct is present," noted inter alia that the harm BMW inflicted on the plaintiff was "purely economic in nature" and that "BMW's conduct evinced no indifference to or reckless disregard for the health and safety of others." *Id.* at 576, 116 S.Ct. at 1599. Although conceding Stroud did not intend to harm anyone by his conduct, Lints cites *Williams v. Crist,* 484 N.E.2d 576, 578 (Ind.1985), for the proposition that an intoxicated driver is per se "guilty of willful and wanton misconduct when he deliberately assumes control of an automobile and places it upon a public highway." [3] We agree that the evidence supports the conclusion that Stroud's behavior went far beyond simple or even gross negligence. He operated his vehicle in a highly reckless manner in addition to being intoxicated while doing so. Approximately one month before the accident Stroud had been ticketed for illegal consumption of alcohol while operating a motor vehicle, which evidently had no deterrent effect. Stroud's willful and wanton misconduct did evince substantial disregard for the health and safety of others and did in fact result in great physical injury to Lints, as opposed to merely economic injury. Short of intentionally causing physical injury to another, Stroud's conduct could hardly have been more reprehensible.

■ "The second and perhaps most commonly cited indicium of an unreason-

**3.** Although this is an accurate citation to the holding, we note that Chief Justice Givan wrote this statement, with Justice Pivarnik concurring, purporting to overrule an earlier case that said that under the former version of the Indiana Guest Statute, driving while intoxicated must be combined with some other misconduct or reckless driving behavior to rise to the level of willful and wanton conduct. *Andert v. Fuchs,* 271 Ind. 627, 631–32, 394 N.E.2d 931, 934–35 (1979). Then Justice Shepard and Justice DeBruler concurred in the result, but stated that *Andert* should not have been overruled. *Williams,* 484 N.E.2d at 579. Justice Prentice dissented from the grant of transfer, also citing *Andert* as controlling authority. *Id.* Thus, three out of the five justices voted to adhere to *Andert.* Regardless, we conclude that the manner in which Stroud drove while intoxicated was sufficiently egregious even under the *Andert* standard to rise to the level of willful and wanton misconduct.

able or excessive punitive damages award is its ratio to the actual harm inflicted on the plaintiff." *BMW*, 517 U.S. at 580, 116 S.Ct. at 1601. In other words, there must be a "reasonable relationship" between punitive and compensatory damages. *Id.* The Supreme Court was troubled by the 500 to 1 punitive to compensatory damages ratio in the *BMW* case. On the other hand, this court has in the past affirmed punitive damages awards that have been as much as 150 times greater than the compensatory damages. *See Emerson v. Markle*, 539 N.E.2d 35, 40 (Ind.Ct.App. 1989), *trans. denied.* Here, the punitive damages are actually nearly two-thirds *less* than the compensatory damages, after accounting for Lints' comparative fault. Clearly, the punitive damages awarded in this case bear a reasonable relationship to the actual harm suffered by Lints as represented by the amount of the compensatory damages award, which Stroud does not challenge on appeal.

"Comparing the punitive damages award and the civil or criminal penalties that could be imposed for comparable misconduct provides a third indicium of excessiveness." *Ford Motor Co.*, 705 N.E.2d at 562. Operating a vehicle while intoxicated and causing serious bodily injury is a Class D felony that would address Stroud's conduct as it affected Lints and carries a maximum $10,000 fine. Ind.Code §§ 9–30–5–4 and 35–50–2–7(a). The punitive damages award here is thus fifty times greater than the possible criminal monetary penalty. A person may also be imprisoned for up to three years for a Class D felony, however, which makes the difference in monetary penalties less relevant. *See BMW*, 517 U.S. at 583, 116 S.Ct. at 1603.

As for comparable civil penalties, we are unaware of any reported case in Indiana with a similar fact pattern and an award of punitive damages with which to compare

this case. Lints directs us to the case of *Warhurst v. White*, 310 Ark. 546, 838 S.W.2d 350 (1992). There, the defendant killed one motorcyclist and injured another while driving while intoxicated. The Supreme Court of Arkansas affirmed two punitive damages awards of $500,000 against the defendant for each victim. It acknowledged that the defendant's financial wealth is a proper element to be considered in the computation of punitive damages and that the defendant in that case had no assets and little income, but it nonetheless affirmed the awards, noting inter alia that punitive damages must be sufficient to deter not only the specific wrongdoer, but others in the general public as well. *Id.* at 552, 838 S.W.2d at 352–53. The punitive damages award against Stroud is, therefore, consistent with available precedent.

Stroud's arguments for reversal or remittitur focus primarily on his alleged inability to pay the $500,000 in punitive damages, as well as on the fact that he has already been subjected to criminal sanctions for his conduct. He is correct that this court has often affirmed large punitive damages awards only after considering the defendant's wealth and ability to pay the award. *See Executive Builders*, 741 N.E.2d at 361 (holding $1.64 million in punitive damages not "oppressive" where award still left defendant with 90% of his wealth); *Dow Chemical Co. v. St. Vincent Hosp. & Health Care Center, Inc.*, 553 N.E.2d 144, 151 (Ind.Ct.App.1990), (noting defendant's "phenomenal wealth (total assets of $14.356 billion) as indicating that the $5 million punitive damages award is not excessive but would have the desired deterrent effect"); *Archem, Inc.*, 549 N.E.2d at 1061 (affirming $750,000 punitive damages award after noting defendant's net worth of at least $5 million).

Unlike these cases, however, there is no concrete evidence in the record regarding Stroud's net worth. Stroud argues that because Lints was seeking punitive damages and because some opinions of this court have stated that the defendant's economic wealth is a factor that may or even should be considered when assessing punitive damages, it was Lints' burden to present evidence of Stroud's economic wealth and ability to pay. We disagree.

In *Hibschman Pontiac v. Batchelor,* our supreme court said "there appears to be no requirement that evidence of [a defendant's] worth be submitted in cases of punitive damages." 266 Ind. 310, 316–17, 362 N.E.2d 845, 849 (1977). The court has not revisited this issue in the past twenty-four years, making *Hibschman* the current law on the subject. Also, we have held after *Hibschman* that although a defendant's assets and income are relevant factors that may be considered in determining whether an award of punitive damages is excessive, the absence of evidence of economic wealth does not necessarily render the amount of punitive damages so speculative as to be excessive where (as here) the fact finder has other evidence to consider, such as the nature of the tort. *Arlington State Bank v. Colvin,* 545 N.E.2d 572, 580 (Ind.Ct.App.1989). We also observe that Judge Posner of the United States Seventh Circuit has flatly rejected the proposition that a plaintiff must present evidence of a defendant's wealth when seeking punitive damages. *Kemezy v. Peters,* 79 F.3d 33, 36 (7th Cir.1996). *See also Mathie v. Fries,* 121 F.3d 808, 816 (2nd.Cir.1997) (holding it is well established in the Second Circuit that it is the defendant's burden to show that his financial circumstances warrant limitation of a punitive damages award).

We recognize that Stroud was a seventeen-year-old high school student at the time of the accident, and that at the time of the civil trial he had served two years of incarceration and was on work release. It may be that this evidence permitted a reasonable inference that Stroud is an individual with little economic wealth and virtually no present ability to pay a $500,000 punitive damages judgment. Still, this was one factor among several that the trial court was entitled to consider when assessing punitive damages and one that we do not believe was required to be given special weight, particularly given the lack of definitive evidence on the issue. Alternatively, we conclude the trial court reasonably could have decided, without committing an abuse of discretion, that Stroud's alleged lack of economic wealth was not at all proven and was a factor entitled to *no* weight because of this lack of evidence.

Stroud also relies heavily on a case from the United States Northern District of Indiana, *Fall v. Indiana University Board of Trustees,* 33 F.Supp.2d 729 (N.D.Ind. 1998). There, in a case involving federal gender discrimination and state law sexual assault and battery, the district court ordered an optional remittitur of the jury's punitive damages award from $800,000 to $50,000. *Id.* at 748. The court discussed the fact that the defendant earned only $90,000 per year and that he would be "personally responsible for satisfying the judgment." *Id.* at 747. The court held the punitive damages award was "far in excess of what is reasonably necessary to punish and deter." However, the *Fall* court relied on several other factors in concluding the punitive damages award was impermissibly excessive. We have already discussed these factors as applied to this case and have indicated that they weigh against Stroud. These included the reprehensibility of the defendant's conduct (the sexual battery did not result in physical injury), the ratio of punitive to compen-

satory damages (155 to 1), and sanctions for comparable misconduct (punitive damages ranging from $2,500 to $50,000). *Id.* at 744–747. Thus, the *Fall* court did not rely exclusively on the defendant's personal liability for the punitive damages award in deciding that it was excessive. In addition, there is no comparable evidence in the record concerning Stroud's ability to pay.

Stroud also claims that the fact that he pled guilty to six criminal charges stemming from the automobile accident is another basis for reducing the amount of the punitive damages award. He concedes the existence of Indiana Code Section 34–24–3–3, which provides that is not a defense to a punitive damages action that the defendant is "subject to criminal prosecution" for the act that gave rise to the civil suit. He also acknowledges the holding of *Robbins v. McCarthy*, 581 N.E.2d 929, 935 (Ind.Ct.App.1991), *trans. denied*, where this court specifically concluded that a defendant's conviction and sentence in connection with an accident caused by driving while intoxicated did not preclude recovery of punitive damages by an injured passenger in a subsequent civil action. Additionally, no Indiana case cites criminal punishment as a factor to be considered when calculating the amount of punitive damages. Nevertheless, Stroud essentially claims that the goal of punitive damages—punishment of the wrongdoer and deterrence of the wrongdoer and society at large—are goals also served by criminal punishment. As such, he asserts that the fact that a person has been subjected to criminal punishment for his or her conduct, while not barring punitive damages altogether, is still a factor that should be considered when assessing an appropriate amount of punitive damages. Stroud makes a cogent argument on this point, and we agree that a fact finder may, in its discretion, consider any criminal punish-

ment imposed on a defendant when assessing the appropriate amount of punitive damages in a civil action arising from the same conduct. However, it is only one factor out of many that may be considered and, in light of Indiana Code Section 34–24–3–3, it need not be given any special weight.

 Several factors here weigh in favor of a larger punitive damages award: the reprehensibility of Stroud's conduct; the ratio of compensatory to punitive damages; and damages awarded in comparable cases. Other factors favor a smaller award: Stroud's arguable lack of wealth and the fact that he has already been criminally punished for the same conduct. We also note that trial and appellate courts no longer award and review punitive damages awards in a complete vacuum, as once was the case. Our legislature has enacted a cap on punitive damages, so that they cannot exceed three times the compensatory damages or $50,000, whichever is greater. Ind.Code § 34–51–3–4. What that means in the present case is that once it was established by clear and convincing evidence that punitive damages against Stroud were appropriate, the range of such damages was established by statute as being between $1 and approximately $4.1 million, or three times the compensatory damages of $1,381,500. Viewed in this context, the award of $500,000 in punitive damages was at the lower end of the range of possibility. In a sense, with the range of punitive damages being established by statute, the amount of such an award by a trial court is very much akin to the imposition of a criminal sentence within the range of possible penalties for an offense as established by the legislature, which is an observation that the *Cooper* opinion also made. 532 U.S. at ——, 121 S.Ct. at 1683–84. In Indiana, when a trial court imposes a criminal sen-

tence within the statutory range of possible penalties, the determination of the proper weight to be given aggravating and mitigating circumstances and the appropriateness of the sentence as a whole is entitled to great deference and will be set aside only upon a showing of a manifest abuse of discretion. *Dunlop v. State*, 724 N.E.2d 592, 597 (Ind.2000). Here, the trial court had a variety of factors to consider and balance—some of which might be called "aggravating" and others "mitigating" and we cannot say the outcome of that balancing—the $500,000 punitive damages award—constitutes an abuse of discretion.

Our decision today should not be construed as a broad grant of authority to impose large punitive damages awards against individuals. In another case with a different set of facts, another trial court or jury may decide not to impose such a large award. Nor should a punitive damages award be made or affirmed solely on the basis that it does not exceed the cap established by the legislature. As with a criminal sentence that technically falls under the statutory maximum but is nonetheless "manifestly unreasonable," so too a punitive damages award that falls under the statutory cap may be impermissibly excessive. In this particular case we cannot say the $500,000 punitive damages award is so clearly against the logic and effect of the entirety of the facts and circumstances before the trial court as to constitute an abuse of discretion.

### II. Cross–Appeal Issues

#### A. Mother's Liability for Punitive Damages

Lints claims that because Stroud's mother signed his driver's license application, she should be jointly liable not only for the compensatory damages in this case, but also the punitive damages. Indiana Code Section 9–24–9–4(a) provides:

An individual who signs an application for a permit or license under this chapter [concerning minor applicants] agrees to be responsible jointly and severally with the minor applicant for any injury or damage that the minor applicant causes by reason of the operation of a motor vehicle if the minor applicant is liable in damages.

There is little case law interpreting this provision. Specifically, there is no case stating whether "any injury or damage" necessarily imputes liability for punitive as well as compensatory damages to the person signing a minor's driver's license application. No Indiana case discusses the general proposition of whether a parent or other individual who is jointly or vicariously liable for damages "caused" by another is also necessarily liable for any punitive damages assessed against the tortfeasor. It does appear that in Indiana a corporation may be held vicariously liable for punitive damages assessed against an employee. *See Stevenson v. Hamilton Mut. Ins. Co.*, 672 N.E.2d 467, 474–75 (Ind.Ct. App.1996), *trans. denied.* Such liability is based on respondeat superior, however, which requires that the tortious conduct of the employee occurred in the scope of the employment. *See Sword v. NKC Hospitals, Inc.*, 714 N.E.2d 142, 148 (Ind.1999).

We find the following discussion to be instructive:

Exemplary damages can be awarded only against one who has participated in the wrongful act, and usually are not given against those liable, if at all, merely by reason of their relation to the wrongdoer. Since punitive damages are awarded primarily to punish the offender and discourage similar offenses, these justifications for their imposition are sharply diminished if vicarious liability were recognized. However, there are exceptions to the above rule dealing with

the liability of employers and principals for the acts of their agents. . . .

22 Am.Jur.2d 836, § 785 (1988) (footnotes omitted). Thus, outside of the master-servant or principal-agent context, the common law appears to disfavor vicarious liability for punitive damages. *See also Franz v. Brennan*, 150 Wis.2d 1, 8, 440 N.W.2d 562, 565 (1989) ("Punitive damages, then, are generally not recoverable in cases of vicarious liability."). This court has also previously observed that the similarly-worded predecessor to Section 9–24–9–4(a) does not impute negligence (or other wrongdoing) to the signer of the minor's driver's license application; it only imputes liability. *Wenisch v. Hoffmeister*, 168 Ind. App. 247, 250, 342 N.E.2d 665, 666 (1976). Our legislature has decided not to impute *conduct* of a minor driver to the signer of a minor's driver's license application; thus, the conduct of Stroud that led to the punitive damages award cannot be imputed to his mother.

▮▮▮ We also observe that the statute refers to injury or damages "caused" by a minor for which a parent may be jointly liable. We believe this refers to injuries or damages actually sustained by the tort victim, such as pain and suffering, medical bills, lost wages and the like, and which are remedied by the award of compensatory damages. Punitive damages, on the other hand, do not compensate a victim for his or her injuries but instead are designed to serve the State's interests in deterrence and punishment. *See Carroll v. Statesman Ins. Co.*, 509 N.E.2d 825, 827 (Ind.1987).

▮▮▮ Our supreme court addressed a similar question of statutory interpretation in *Indiana Civil Rights Comm'n v. Alder*, 714 N.E.2d 632 (Ind.1999). It held that the Indiana Civil Rights Commission's authority "to restore the complainant's losses incurred as a result of discriminatory treatment" under Indiana Code Section 22–9–1–6(k)(A) did not include the authority to award punitive damages, noting that punitive damages would not compensate the victim for his or her injury or "loss." *Id.* at 638. Furthermore, "as a general matter, punitive damages require explicit statutory authorization if they are to be recovered under a statutory cause of action." *Id.* Finally, although the court expressed special concern that the punitive damages award in that case was made by an administrative agency rather than a court, it concluded "we would not infer authority to award punitive damages in the absence of clear legislative language to that effect." *Id.* Here, Lints is attempting to hold Stroud's mother liable for the punitive damages award through a statutory cause of action against the signer of a minor's driver's license application. Indiana Code Section 9–24–9–4(a), however, contains no express or implied authorization for the imposition of joint and several liability for punitive damages. For all of these reasons, we conclude that Section 9–24–9–4(a) applies to the recovery of compensatory damages only, and Stroud's mother cannot be held liable for punitive damages under this statute.

▮▮ Having concluded that Stroud's mother cannot be liable for the punitive damages award via the minor's driver's license application statute, we must decide whether Stroud's mother should be held personally liable for punitive damages. Lints is appealing from a negative judgment on this point, because he bore the burden of proving, by clear and convincing evidence, that Stroud's mother acted with malice, fraud, gross negligence or oppressiveness that was not the result of a mistake of fact or law, honest error of judgment, overzealousness, mere negligence, or other human failing. *See Executive Builders, Inc. v. Trisler*, 741 N.E.2d 351, 360

(Ind.Ct.App.2000), *trans. denied, cert. pending.* On appeal from a negative judgment, we do not reverse the judgment of the trial court unless it is contrary to law. *Commissioner, Dep't of Envtl. Mgmt. v. RLG, Inc.,* 755 N.E.2d 556, 559 (Ind.2001). We consider the evidence in the light most favorable to the appellee and will reverse the judgment only if the evidence leads to but one conclusion and the trial court reached an opposite conclusion. *Id.*

Lints' only factual assertion on this claim is that after Stroud was ticketed for illegal consumption of alcohol one month before the accident, his mother should have immediately moved to cancel his license pursuant to Indiana Code Section 9–24–9–4(b). We cannot say that this fact by itself leads to but one conclusion as a matter of law, namely, that Stroud's mother acted with the requisite culpability with respect to the accident that she should personally be held liable for punitive damages. We decline to overturn the trial court's judgment on this point.[4]

### B. Comparative Fault of Lints

 Finally, Lints claims there was insufficient evidence to support the trial court's finding that he was twenty-five percent at fault for his injuries. "In the absence of special findings, we review a trial court decision as a general judgment and, without reweighing evidence or considering witness credibility, affirm if sustainable upon any theory consistent with the evidence." *Perdue Farms, Inc. v. Pryor,* 683 N.E.2d 239, 240 (Ind.1997). "In reviewing a general judgment, we must presume that the trial court correctly followed the law." *Id.*

 Stroud argues that Lints knowingly incurred a risk when he solicited a ride home from Stroud with knowledge that Stroud had been drinking. "Incurred risk requires a 'mental state of venturousness' and a 'conscious, deliberate and intentional embarkation upon the course of conduct with knowledge of the circumstances.' This defense 'contemplates acceptance of a specific risk of which the plaintiff has actual knowledge.'" *Id.* at 242 (citations omitted). Incurred risk used to be a complete defense in Indiana, but has been subsumed by the concept of fault under the Comparative Fault Act. *Heck v. Robey,* 659 N.E.2d 498, 504 (Ind.1995).

 Lints argues that incurred risk should not have been found to exist in this case because he testified that he had previously ridden with Stroud after Stroud had been drinking and had not observed reckless driving similar to what occurred on the night of the accident. Even so, we do not accept that this absolved Lints of all responsibility for his solicitation of a ride with a person whom he knew had been drinking for several hours. It would contravene sound public policy for us to recognize, as a matter of law, that there can be such a thing as a normally "good" drunk driver. Every passenger should be charged with an awareness that knowingly soliciting a ride from a drunk driver is always fraught with danger, even if past rides with that driver while he or she was intoxicated somehow concluded without incident. Lints' solicitation of a ride from Stroud with knowledge that he had been drinking is sufficient to support the trial

**4.** Additionally, we note that Lints has not presented us with any argument upon which to base personal liability against Stroud's mother, outside of the argument based upon the minor's driver's license statute that we rejected. In the absence of a theory upon which to base the personal liability of Stroud's mother, such as the breach of a duty owed to Lints or the commission of an intentional tort, there can be no personal liability against her for punitive damages.

court's comparative fault finding under an incurred risk theory.

## Conclusion

We have reviewed the trial court's decision to impose $500,000 in punitive damages against Stroud for an abuse of discretion and have concluded that, given the various facts and circumstances before the court, it did not abuse its discretion in arriving at that figure. As for Lints' cross-appeal, we hold that Stroud's mother cannot be jointly or vicariously liable for the punitive damages award pursuant to the minor driver's license application statute, nor is there sufficient reason for us to overturn the trial court's decision not to impose punitive damages against her for her own behavior. Finally, we sustain the trial court's finding that Lints was twenty-five percent comparatively at fault for his injuries. We affirm the judgment in all respects.

Affirmed.

MATTINGLY–MAY, J., concurs.

MATHIAS, J., concurs with separate opinion.

MATHIAS, J., concurring.

I write only to emphasize in concurrence that the assignment of twenty-five percent (25%) comparative fault to Lints by the trial court as fact-finder was, under the facts and circumstances of this case, generous ... to Lints. When Lints chose to consume alcohol all day and further chose to ride home with Stroud, who Lints knew had done likewise, he was nearly as culpable as Stroud in the proximate causation of the tragic injuries he received.